UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AFRICARD CO. LTD., | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 16-00196 (ABJ) |
| REPUBLIC OF NIGER, | ) ) ) | |
| Respondent. | ) ) ) | |

## MEMORANDUM OPINION

Petitioner Africard Company, Ltd. ("Africard") has filed a petition to confirm an arbitration award against respondent, the Republic of Niger, pursuant to Section 207 of the Federal Arbitration Act, 9 U.S.C. § 207. Pet. to Confirm Foreign Arb. Award & to Enter J. [Dkt. # 1] ("Pet.") ¶ 1. The petition arises from Niger's 2011 contract with Africard to produce biometric and electronic passports. *Id.* ¶ 12. According to the terms of the parties' agreement, Africard was contracted to produce a minimum of one million biometric and electronic passports, but Africard alleges that on March 24, 2011, Niger unilaterally cancelled the agreement. *Id.* ¶¶ 13–14.

Africard ultimately referred the dispute to arbitration in Abidjan, Côte d'Ivoire.[1] Pet. ¶ 14. On June 9, 2014, the arbitral tribunal issued an Interim Procedural Award, concluding that "the unilateral termination by the State of Niger of the Agreement of October 13, 2011 for the production of biometric and electronic passports in the Republic of Niger [was] abusive and wrongful." Interim Procedural Award, Ex. D to Decl. of Christopher D. Man [Dkt. # 1-5] ("Interim Award") at 33. The tribunal ultimately awarded Africard 44,740,781 West African CFA Francs

---

1   As required by the parties' agreement, the arbitration took place at the Common Court of Justice and Arbitration ("CCJA") of l'Organisation pour l'Harmonisation en Afrique du Droit des Affaires, known as "OHADA." Pet. ¶ 14.

as compensation for costs incurred, 15,440,533,316 West African CFA Francs as compensation for lost profits, 1,000,000,000 West African CFA Francs for reputational harm incurred, and 156,747,299 West African CFA Francs for the cost of the arbitral proceedings. Final Award, Ex. F to Man Decl. [Dkt. # 1-7] ("Final Award") ¶ 64. However, as of February 4, 2016, Niger had not paid any amount of the Final Award. Pet. ¶ 22.

Africard filed its petition to confirm the arbitration award on February 4, 2016. Pet. After Niger was served, and failed to timely answer, the Clerk of Court entered a default against it. Clerk's Entry of Default [Dkt. # 13]. On May 13, 2016, Africard filed a motion for default judgment. Mot. for Default J. as to Repub. of Niger & Confirmation of Arb. Award [Dkt. # 14] ("Mot."); Mem. of Law in Supp. of Mot. [Dkt. # 14] ("Mem."). Though Africard served Niger with a copy of the motion, Niger did not respond. Because the record indicated that counsel for Africard had been contacted by an attorney who conveyed a request on behalf of Niger but also indicated that he had not been retained to defend this action, *see* Decl. of Mark D. Beckett [Dkt. # 14-21], on July 7, 2016, the Court entered an order asking petitioner to update the Court on whether it had any further contact with that lawyer. Min. Order (July 7, 2016). Petitioner responded, noting that it had received no further communications from Niger's attorneys on this matter, and it informed the Court that Niger's application to set aside the arbitration award had been denied. Status Report (July 19, 2016) [Dkt. # 22].

### STANDARD OF REVIEW

Under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, a court shall not enter a default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This standard is identical to the standard for entry of default judgments against the United States under Federal

Rule of Civil Procedure 55(d). *Hill v. Repub. of Iraq,* 328 F.3d 680, 683 (D.C. Cir. 2003). As a result, the court cannot treat the allegations asserted in the petition as true, and must "inquire further before entering judgment against parties in default." *Rimkus v. Islamic Repub. of Iran,* 750 F. Supp. 2d 163, 171 (D.D.C. 2010). Upon evaluating petitioner's claim, though, the court "may accept the plaintiff's uncontroverted factual allegations if they are supported by documentary and affidavit evidence." *Lanny J. Davis & Assocs LLC v. Repub. of Eq. Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013).

## ANALYSIS

**I.     The Court has subject matter jurisdiction over this dispute.**

Before the Court may consider whether Africard is entitled to a default judgment in this matter, it must assess whether it has subject matter jurisdiction over this dispute. Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").

**A.     The Court can exercise jurisdiction under the Federal Arbitration Act.**

The Federal Arbitration Act ("FAA") codifies an international convention known as the New York Convention into U.S. law. 9 U.S.C. § 201 *et seq*. Section 202 of the FAA specifies that: "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the [New York] Convention." 9 U.S.C. § 202. The "district courts of the United States . . . shall have original jurisdiction over [an action or proceeding falling under the Convention], regardless of the amount in controversy." 9 U.S.C. § 203.

As the Second Circuit has explained, a court will have subject matter jurisdiction under the FAA when: "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001).

Africard has identified a written agreement – the "Agreement for the Production of Biometric and Electronic Passports (E-Passports) in the Republic of Niger" – that governed the parties' conduct in this case. Ex. 3 to Mot. [Dkt. # 14-4] ("Agreement").[2] And Article 25 of the Agreement provides that "any dispute shall be submitted by one of the parties for arbitration by the OHADA Common Court of Justice and Arbitration" in Côte d'Ivoire. *Id.*, Art. 25. Côte d'Ivoire, Niger, and the United States are all parties to the New York Convention. *See* Contracting States, http://www.newyorkconvention.org/countries; *see also Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999) ("[T]he critical element is the place of the award: if that place is in the territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration."), quoting Restatement (Third) of Foreign Relations Law § 487 cmt b (1987). Further, the subject matter of the agreement is not entirely domestic in scope, because it involves a dispute originating in Niger, and none of the parties are citizens of the United States. *See* 9 U.S.C. § 202 ("An agreement or award arising out of [a commercial relationship] which is entirely between citizens of the United States shall not be deemed to fall under the Convention . . . .").

---

2   Africard has provided many documents in both the original French, and as certified translations to English. The Court will cite to the certified translations.

Finally, the subject matter of the agreement is clearly commercial. As the D.C. Circuit recently recognized, the term "commercial" as used in the New York Convention, though it does not have a specific statutory definition, refers to "matters or relationships, whether contractual or not, that arise out of or in connection with commerce." *Belize Social Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 103–04 (D.C. Cir. 2015), citing Restatement (Third) of U.S. Law of Int'l Commercial Arb. § 1-1 (2012); Restatement (Third) of Foreign Relations Law § 487 cmt. f (1987) (explaining that "the fact that an agreement to arbitrate is in the contract between a government and a private person may confirm its commercial character."). The *Belize* court added that "the full scope of 'commerce' and 'foreign commerce' as those terms have been broadly interpreted, is available for arbitral agreements and awards." 794 F.3d at 104, citing *Island Territory of Curacao v. Solitron Devices, Inc.*, 356 F. Supp. 1, 13 (S.D.N.Y. 1973).

The dispute in this case, which arises out of a service contract between a company and a government to provide biometric and electronic passports, Mem. at 11, clearly "arise[s] out of or in connection with commerce." *See Belize*, 794 F.3d at 104.

Because the Court finds that each of the four factors of the *U.S. Titan* test have been met, it finds that it has jurisdiction under the FAA. The next question to consider is whether Niger nonetheless enjoys foreign sovereign immunity in this enforcement action under the Foreign Sovereign Immunities Act. *See Creighton Ltd.*, 181 F.3d at 121.

**B.     The Court can exercise jurisdiction under the FSIA.**

The Foreign Sovereign Immunities Act ("FSIA") is the "sole basis for obtaining jurisdiction over a foreign state in the courts of [the United States]." *Belize*, 794 F.3d at 101, quoting *Argentine Repub. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under the FSIA, 28 U.S.C. § 1602 *et seq.*, "a foreign state is presumptively immune from the jurisdiction

5

of United States courts," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Because "subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions . . . [a]t the threshold of every action in a district court against a foreign state . . . the court must satisfy itself that one of the exceptions applies." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983); *see also Belize*, 794 F.3d at 101 (describing the FSIA's terms as "absolute").

Arbitral awards that are subject to the New York Convention fall under the "treaty" exception to the FSIA. That exception provides that:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . .
>
> (6) in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605. It is well settled that the New York Convention gives rise to jurisdiction under the treaty exception. *Creighton Ltd.*, 181 F.3d at 123–24 ("Indeed, it has been said with authority that the New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'"), quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993). So Niger does not enjoy sovereign immunity under the FSIA.

## II. Africard appropriately served Niger according to the requirements of the FSIA.

The Court next considers whether Niger is properly on notice of this lawsuit. The FSIA requires that foreign states must be served in one of the following ways:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign

> state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.
>
> (4) if service cannot be made under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state . . . to the Secretary of State in Washington, District of Columbia . . . and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state . . . .

28 U.S.C. § 1608(a).

Service in this case must be made under 28 U.S.C. § 1608(a)(3), because there is no evidence that any special arrangements apply. Africard's attorney submitted a declaration which states that:

> On February 5, 2016, the Petitioner requested the Clerk of the Court to serve a copy of the Summons, Notice of Suit and Petition, together with all exhibits and translations in the official language of Niger, French, pursuant to 28 U.S.C. § 1608(a)(3), on the head of the Ministry of Foreign Affairs of Niger.

Decl. of Christopher D. Man, Ex. 1 to Mot. [Dkt # 14] ("Man Decl.") ¶ 27. The Clerk of Court mailed "[o]ne copy of the summons, complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by registered mail, return receipt requested, to the head of the ministry of foreign affairs, pursuant to the provisions of 28 U.S.C. § 1608(a)(3)." Certificate of Mailing [Dkt. # 9] at 1. That is all that is required under the FSIA.

7

In addition, it appears that Niger is aware of the pendency of this suit. As Africard's attorney avers in his declaration:

> On April 4 and April 8, 2016, I received emails from SCPA Justicia at a Yahoo email address, that purport to be sent on behalf of Niger. They attach a document objecting to this lawsuit (in French and with a translation) primarily on the basis of the pending set-aside proceeding before the CCJA.

Man Decl. ¶ 38[3]; *see also* Ex. 18 to Pet.'s Mot. [Dkt. # 14-19] (April 4, 2016 email, attaching document in French); Ex. 19 to Pet.'s Mot. [Dkt. # 14-20] (April 8, 2016 email, attaching a document in English that appears to contain legal arguments in opposition to the petition to confirm the arbitral award).[4] In addition, counsel reported that "[o]n April 8, 2016, [counsel] received a call from a Peter Dee, a lawyer at . . . a law firm in New York City." Man Decl. ¶ 39. Another of Africard's lawyers spoke with Dee, and reported that:

> Mr. Dee stated that he did not represent the Republic of Niger ("Niger") in this matter because Niger had not retained him. Mr. Dee did say that he thought he may be retained by Niger in the future in connection with this matter. . . . Notwithstanding that Mr. Dee did not represent Niger in this matter, Mr. Dee requested that Africard refrain from seeking an entry of default. I told him that Africard would decline to do so.

Decl. of Mark D. Bennett [Dkt. # 14-21] ¶¶ 6, 8. On July 7, 2016, the Court ordered petitioner to submit a status report "to update the Court on whether it has had any further contact" with Dee, "or whether it has any further information regarding respondent's appearance in this matter." Min. Order (July 7, 2016). Petitioner responded that it had no further contact with Dee, nor did it have

---

3     Africard has since reported that the "pending set aside proceeding" has been resolved in Africard's favor. *See* Status Report [Dkt. # 22] at 2.

4     If Niger wishes assert legal arguments in this matter, it may file an appropriate motion on the Court's docket. The Court will not consider the legal arguments made in the April 8, 2016 email.

any additional information to provide. Status Report [Dkt. # 22] at 2. To this date, Niger has not taken any steps to defend this action or respond to the motion for default judgment.

**III.** **Since the Court has subject matter jurisdiction and service was proper, the Court can exercise personal jurisdiction over Niger.**

"[F]oreign sovereigns and their extensively-controlled instrumentalities are not 'persons' under the Fifth Amendment's Due Process Clause – and thus have no right to assert a personal jurisdiction defense." *GSS Grp. Ltd v. Nat'l Port Auth.,* 680 F.3d 805, 809 (D.C. Cir. 2012). Instead, the provisions of the FSIA determine whether a court can exercise personal jurisdiction over a foreign sovereign. A court can exercise personal jurisdiction over a foreign state with respect to "every claim for relief over which the district courts have [subject matter] jurisdiction . . . where service has been made under section 1608." 28 U.S.C. § 1330(b). In other words, in the context of a suit against a foreign sovereign, "subject matter jurisdiction plus service of process equals personal jurisdiction." *Practical Concepts, Inc. v. Repub. of Bolivia,* 811 F.2d 1543, 1548 n. 11 (D.C. Cir. 1987); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 99 (D.C. Cir. 2002) (holding that "the Fifth Amendment poses no obstacle to the decision of the United States government to subject Libya to personal jurisdiction in the federal courts"). Because the Court has concluded that it has subject matter jurisdiction to enforce the arbitral agreement, and that service was proper, it finds that it has personal jurisdiction over Niger as well.

**IV.** **The Court will grant the motion for a default judgment and it will confirm the arbitration award.**

Because the Court has jurisdiction over the dispute, it may consider the merits of the motion for a default judgment. Under the FAA, the Court is required to "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in

9

the [New York] Convention." 9 U.S.C. § 207; *see also TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007). "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court[,] . . . the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral wards." *Belize*, 668 F.3d at 727, quoting *Mitsubishi Motors Corp v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

Article V(1) of the New York Convention provides five grounds on which a Court can deny confirmation of an arbitral award, "at the request of the party against whom it is invoked":

(a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present its case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

The party resisting confirmation "bears the heavy burden of establishing that one of the grounds for denying confirmation in Article V applies." *Gold Reserve, Inc. v. Bolivarian Repub. of*

*Venezuela*, 146 F. Supp. 3d 112, 120 (D.D.C. 2015). Given Niger's lack of appearance in this matter, it has not met its burden on any of those objections.[5]

Article V(2) provides two additional grounds for denying recognition of an arbitral award, whether the respondent asserts them or not:

> (a) The subject matter of the difference is not capable of settlement by arbitration under the law of [the country where enforcement is sought]; or
>
> (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Neither of these objections appear on the face of the petition, either. This dispute appears to arise out of a breach of contract, which is surely capable of settlement by arbitration in the United States. And in light of the "emphatic federal policy in favor of arbitral dispute resolution," *Mitsubishi Motors*, 473 U.S. at 631, the Court does not find that the public policy exception would bar enforcement either.

So, given the "little discretion" afforded to the Court to deny confirmation of an arbitral award, *Belize*, 668 F.3d at 727, Niger's lack of appearance in this matter, and Africard's

---

5   Moreover, the facts that Niger appeared and defended against the arbitration proceedings, and that its motion to set the award aside has been resolved, indicate that grounds (b) and (c) appear to be inapplicable. The Court's review of the contract and award suggests that ground (c) is inapplicable as well.

compliance with the procedural requirements set forth in Article 1 of the New York Convention,[6] the Court will grant the motion for a default judgment, and grant the petition to confirm the arbitral award.

## V.    The Court will award $46,128,410.46.

The Final Award ordered Niger to pay Africard the following amounts:

- 44,740,781 CFA Francs as compensation for costs incurred, with interest at the rate of 13% per annum accruing from April 15, 2013;

- 15,440,533,316 CFA Francs as compensation for lost profits, with interest at the rate of 13% per annum accruing from April 15, 2013;

- 1,000,000,000 CFA Francs for reputational harms incurred, with interest at the rate of 13% per annum accruing from the date of the issuance of the Final Award, December 6, 2014; and

- 156,747,299 CFA Francs for the costs of the arbitral proceedings.

Award ¶ 64.

Africard requests that in granting judgment to it, the Court should convert the amount of the award, which was rendered in a foreign currency, to dollars. Mem. at 16. "Conversion of . . . foreign currency amounts into dollars at judgment is the norm, rather than the exception." *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 158 (D.D.C. 2013), citing *Elite Entm't, Inc. v. Khela Bros. Entm't, Inc.*, 396 F. Supp. 2d 680, 694 (E.D. Va. 2005).

---

6    The Convention provides that a party seeking enforcement of an arbitral award must "supply [] (a) the duly authenticated original award or a duly certified copy thereof; [and] (b) the original agreement [in which the parties agreed to arbitration]." Art. IV(1). In addition, the Convention requires that a party seeking confirmation of an award written in a foreign language must submit a certified translation of the award. *Id.* at IV(2). Africard has submitted the required documents. *See* Ex. E to Pet. [Dkt. # 1-6] (certified copy of Final Award); Ex. A to Pet. [Dkt. # 1-2] (certified copy of the agreement between the parties); Exs. B, F to Pet. [Dkt. # 1-3, 1-7] (certified translations of the Agreement and Final Award). In addition, the FAA provides that a petitioner must seek recognition of an arbitral award "[w]ithin three years after an arbitral award falling under the Convention is made." 9 U.S.C. § 207. The Final Award was rendered on December 6, 2014, *see* Final Award ¶ 64, so Africard is well within its three-year limitations period.

"Courts in the United States ordinarily give judgment on causes of action arising in another state, or denominated in a foreign currency, in United States dollars, but they are not precluded from giving judgment in the currency in which the obligation is denominated or the loss was incurred." Restatement (Third) of Foreign Relations Law § 823(1). So, "if the foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of injury or breach." *Id.* § 823 cmt. c. But if, on the other hand, "the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment or the date of payment." *Id.*

The United States Department of Treasury reports exchange rates on a quarterly basis. For the quarter ending on June 30, 2016, 1 dollar equaled 590.6900 West African CFA Francs. Treasury Reported Rates of Exchange, https://www.fiscal.treasury.gov/fsreports/rpt/treasRptRateExch/currentRates.htm. For the quarter ending on September 30, 2014, which would apply to the arbitral award issued on December 6, 2014, 1 dollar equaled 516.6500. Since the exchange rate has depreciated since the date of the Final Award, the Court will use the higher amount. The results of the calculation are as follows:

| Amount awarded (in CFA Francs)[7] | Amount awarded (in USD)[8] | Daily interest rate[9] | Date interest accrues[10] | Days of interest[11] | Total with interest (in USD)[12] |
|---|---|---|---|---|---|
| 44,740,781 | $86,597.85 | 0.0356% | 4/15/2013 | 1261 | $125,490.97 |
| 15,440,533,316 | $29,885,867.25 | 0.0356% | 4/15/2013 | 1261 | $43,308,306.21 |
| 1,000,000,000 | $1,935,546.31 | 0.0356% | 12/6/2014 | 661 | $2,391,221.63 |
| 156,747,299 | $303,391.66 | 0.0000% | | | $303,391.66 |

Adding all of those amounts, the total award will be $46,128,410.46.[13]

---

7   See Final Award ¶ 64.

8   The Court divided the amount awarded in CFA Francs by 516.65, the relevant exchange rate.

9   The Court divided the interest rate of 13% by 365 days per year.

10  See Final Award ¶ 64.

11  The Court calculated the number of days that have elapsed between the date interest began to accrue and the date of this Memorandum Opinion, September 27, 2016.

12  The Court multiplied the amount awarded (in USD) by the daily interest rate by the days of interest, and it added that product to the amount awarded.

13  Petitioner notes that it also seeks "costs of this proceeding including reasonable attorneys' fees," but it has not provided the Court with a motion for fees and costs, or its billing records. If petitioner believes that it is entitled to that relief, it may bring an appropriate motion.

14

## CONCLUSION

For the reasons explained above, the Court finds that it has subject matter and personal jurisdiction over the Republic of Niger in this case. Under the Federal Arbitration Act, the Court will grant the petition to confirm the arbitral award, and the motion for a default judgment, and it will award judgment to Africard in the amount of $46,128,410.46.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 27, 2016